BERRYMAN ET AL., APPELLANTS, *v.* BILLINGS MUTUAL
HEATING CO., RESPONDENT.

(No. 3,060.)

(Submitted January 19, 1912.  Decided January 25, 1912.)

[121 Pac. 280.]

*Receivers—Property   Under   Attachment—Insolvency—When
Appointment Improper—Collateral Attack.*

Receivers—Collateral Attack of Order Appointing.
1.   An order appointing a receiver which is only voidable cannot be
successfully subjected to a collateral attack; one void may be so
attacked.

Same—Property Under Attachment—Appointment Improper.
2.   A receiver may not be appointed in attachment suits, either under
subdivision 1 of section 6698, Revised Codes, or under subdivision 6
thereof.

Same—Insolvency—Not Alone Sufficient for Appointment.
3.   The mere fact that a corporation is insolvent is not sufficient
justification for the appointment of a receiver; before such an officer
may be appointed, there must be a necessity therefor.

Same—Improper Appointment.
4.   Where plaintiff had an attachment on property worth $50,000
to satisfy an undisputed claim of $5,000, and the record on appeal
failed to disclose any prior liens, the appointment of a receiver *held*
unwarranted.

Same—Preserving Property—Improper Appointment.
5.   A court of law has no authority to appoint a receiver of prop-
erty under attachment for the sole purpose of preserving the prop-
erty and continuing the business of a defendant *pendente lite.*

Same—Consent of Defendant—Jurisdiction.
6.   The consent of a corporation to the appointment of a receiver to
take charge of its affairs, on the ground of insolvency, did not confer
jurisdiction upon the court to make it.

*Appeal from District Court, Yellowstone County; Sydney
Fox, Judge.*

ACTION by J. J. Berryman and another against the Billings
Mutual Heating Company.  From an order vacating an attach-
ment, plaintiffs appeal.  Reversed and remanded.

Cause submitted on briefs of counsel.

*Mr. F. B. Reynolds,* for Appellants.

*Messrs. Nichols & Wilson,* for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

On the 23d day of July, 1910, A. B. La Mott, the president of the defendant corporation, Billings Mutual Heating Company, began an action against the company in the district court of Yellowstone county. On July 25, 1910, he filed his verified petition as follows:

"Comes now the plaintiff in the above-entitled cause and states to the court:

"1. That on the 23d day of July, 1910, he commenced the above-entitled action against the defendant company to recover upon the certain promissory note of the defendant, executed to him in the sum of five thousand ($5,000) dollars, and therein secured a writ of attachment against the property of the defendant, which writ has been duly levied upon the property of the defendant company. The complaint, affidavit, writ of attachment, summons and sheriff's return in which said action are hereby referred to and made a part of this application.

"2. That the defendant company, a corporation organized under the laws of the state of Montana, has its principal place of business at Billings, in said state, and is engaged in furnishing heat to residences and business property in said city, and is at the present time a growing concern.

"3. Plaintiff further alleges that the property of the defendant company consists of certain real estate and buildings thereon, and certain machinery consisting of pumps, engines, boilers, *etc.*, and lines of pipe through which hot water is forced for the purpose of furnishing heat to its patrons, and in addition thereto outstanding accounts due and payable from its patrons. That said property and funds are in danger of being lost, removed or materially injured unless a receiver is appointed to take charge and custody thereof under the orders of the court.

"4. Plaintiff further alleges that the defendant company is largely indebted, to-wit, approximately in the sum of fifty-nine thousand ($59,000) dollars, to various parties, and among them to the plaintiff in the sum of twenty-two thousand ($22,000) dollars. That of such indebtedness there is at present due and

unpaid on account of want of funds approximately the sum of nine thousand ($9,000) dollars, and that a large portion of said indebtedness will mature within the next ensuing sixty (60) days, and that all of said indebtedness will become due and payable not later than January 15, 1911. That in addition to the indebtedness hereinbefore mentioned said company has outstanding its bonds in the sum of twenty-five thousand ($25,000) dollars, the interest upon the major portion of which is now due and unpaid for want of funds. That the assets of the said defendant company are of the approximate value of fifty thousand ($50,000) dollars.

"5. Plaintiff alleges the fact to be that the said company is now insolvent, or in imminent danger of insolvency.

"6. Plaintiff further alleges that a receiver should be appointed by the court to take charge of the property, rights and credits of the defendant company, preserve the same, collecting its accounts, continuing its business and disposing of its property under the orders of the court to the satisfaction of the company's indebtedness.

"Plaintiff therefore prays for the appointment of a receiver for the purposes above mentioned."

On August 9, 1910, the court entered an order appointing a receiver, which order reads as follows:

"The above-named plaintiff having heretofore, to-wit, on the 23d day of July, 1910, filed herein his verified complaint demanding judgment against the above-named defendant for the sum of five thousand ($5,000) dollars, on account of one certain promissory note, together with interest and attorney's fees, in which said action the property of the defendant company has been levied on under a writ of attachment; and the said plaintiff · having thereafter, to-wit, on the 25th day of July, 1910, filed herein his application for the appointment of a receiver to take charge of the property and assets of the defendant for the purpose of winding up the business and affairs of said corporation, collecting its assets and accounts and distributing the same to the persons entitled thereto, under the discretion of this court;

"And said application coming on regularly this day in open court for hearing, and proof having been made to the satisfaction of the court that due notice of the time and place of such hearing had been served upon the defendant, as required by law;

"And the court having heard the proofs adduced in support of the allegations of said complaint and application, and it satisfactorily appearing therefrom that said defendant company is now insolvent, or in imminent danger of insolvency; that it is so heavily indebted and involved that it is impossible for it to meet its obligations now due and to become due, and that it is impossible to realize any appreciable sum upon the assets of said company without great sacrifice, and all and singular the allegations of said complaint and application being sustained by competent and legal proof to the satisfaction of this court, and the court being fully advised in the premises;

"Now, therefore, it is hereby ordered, adjudged and decreed that C. O. Myers, of Billings, Montana, be and he is hereby appointed receiver of the Billings Mutual Heating Company, a corporation of Billings, Yellowstone county, Montana, upon his executing and filing with the clerk of this court his oath and a good and sufficient bond to be approved by said clerk, and executed to the state of Montana in the sum of ten thousand ($10,000) dollars, said receiver to take charge of the defendant's property, assets, books, estate, accounts, books of accounts, evidences of indebtedness and effects of every kind, nature and description wherever the same may be situate and in the possession of whomsoever the same may be found; to take charge of, operate, manage and conduct the business of said defendant company; to collect the debts, assets, accounts, claims and property due and belonging to said defendant, or to become due to it; and to pay over and distribute the moneys, assets and property of said company to its creditors in the manner and in such proportions as shall be by this court hereafter ordered and directed; to bring and defend such actions as may be necessary or expedient to carry out the purposes of his appointment, and gen-

erally to do such acts respecting the property and conduct of the affairs of such defendant company as may be authorized and directed by this court; and to make a full, complete and itemized report and account to this court at least once every month during the administration of his trust as such receiver, and at such other times as may be ordered by this court, such reports and accounts to show the general condition of the business and affairs of said company; hereby giving unto said receiver such powers and authority as may be necessary to carry out the purposes of his trust, and such as are usually and ordinarily conferred upon receivers in such cases.''

On or about January 19, 1911, the plaintiffs brought the present action to recover for goods, wares and merchandise sold and delivered, and labor performed, for the defendant at its special instance and request between August 22, 1908, and January 19, 1909; they sued out a writ of attachment and caused the same to be levied on the property of the defendant under the control of the receiver. On January 23, 1911, the defendant company and C. O. Myers, its receiver, moved the district court to vacate and discharge the attachment on the ground that the property was in the custody of the court and not subject to attachment. The motion was granted and plaintiffs appeal from the order. It appeared from the affidavit of Mr. La Mott, filed in support of the motion to discharge the attachment, that the receiver has been in full charge and control of all of the defendant's property since the date of his appointment. The sole question for decision is whether the order appointing the receiver was null and void. If only voidable, it cannot be [1] successfully subjected to a collateral attack, such as has been made by the plaintiffs.

Section 6698, Revised Codes, relied on by the respondent as authority for the appointment of a receiver, reads as follows:

''6698.   A receiver may be appointed by the court in which an action is pending, or by the judge thereof:

''1. In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund

to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured.

"2. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt.

"3. After judgment, to carry the judgment into effect.

"4. After judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or in proceedings in aid of execution, when an execution has been returned unsatisfied, or when the judgment debtor refuses to apply his property in satisfaction of the judgment.

"5. In cases when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights.

"6. In all other cases where receivers have heretofore been appointed by the usage of courts of equity."

This court, in *State ex rel. New York Sheep Co.* v. *Eighth Judicial Dist. Court,* 14 Mont. 577, 37 Pac. 969, held that under subdivision 1 of this statute, a receiver of property attached by different parties in actions at law for the recovery of money [2] only, could not be appointed, although the property was in imminent danger of material injury. In the course of the opinion the late Mr. Justice De Witt said: "If the legislature had intended to give the power to appoint a receiver in attachment suits it is such an important matter that it would seem that they would have mentioned it. * * * It may be expedient to have such a statute." It was conceded in that case that a sufficient showing was made of danger of loss and material injury. The case is also authority for holding that subdivision

6 of the section has no application.   Subdivisions 2, 3 and 4 may be passed without comment.   No claim is made that the defendant corporation has been dissolved or has forfeited its corporate rights.   The allegation is that it is insolvent, and this averment furnishes the sole ground upon which it is claimed the appointment of a receiver may be justified.

It is said that the language employed by the legislative assembly is clear and unambiguous, and therefore that body must be presumed to have meant precisely what it said, to-wit, that a receiver may be appointed for an insolvent corporation.   True.
[3]   But the statute must be read with the understanding that to justify the appointment of a receiver under any circumstances, there must be a necessity therefor.   Without such necessity there is no authority to act, and authority to act is jurisdiction.   The order appointing a receiver in the *New York Sheep Company Case, supra,* was declared a nullity in *certiorari* proceedings.

We see no necessity for the appointment of a receiver in the instant case.   The plaintiff La Mott had an attachment on
[4]   $50,000 worth of property to satisfy a claim of $5,000. So far as the record discloses there were no prior liens and his claim was undisputed.   It must have been reduced to judgment long ago.   Was there any reason why the sheriff could not have satisfied it on execution?   What legitimate purpose could be served by taking the property out of the hands of the sheriff, by whom it would shortly have been sold to satisfy La Mott's claim, and placing it in the custody of a receiver with almost plenary authority to hold, control and manage the same indefinitely, and thereby hinder and delay the other creditors of the company?   The injustice of such a course of procedure is plain when we consider that the Berryman Brothers' claim was long past due and they were entitled to have it satisfied in the usual and regular course of law, without waiting for the time to arrive when $17,000 of additional claims belonging to Mr. La Mott, the president of the defendant corporation, would mature.   The plaintiff in an action at law is not ordinarily

solicitous concerning the defendant's rights, except in so far as they may have some bearing upon his ability to collect his debt. We have no doubt that there are many cases in which a court of equity would feel justified in appointing a receiver for an insolvent corporation. Some of these cases are called to our attention by the learned counsel for the respondent. And there may be cases at law in which a receiver should be appointed. This we do not decide. But the mere fact that a defendant corporation is insolvent is not, of itself, sufficient to justify the appointment. This point was decided in the case of *Forsell* v. *Pittsburg & Mont. C. Co.*, 42 Mont. 412, 113 Pac. 479, wherein this court refused to affirm the appointment of a receiver when the record disclosed an entire absence of necessity for his appointment.

The supreme court of Washington has held that it is the duty of the court to appoint a receiver for an insolvent corporation wherever a simple contract creditor asks for such action on its part. (See *Oleson* v. *Bank of Tacoma*, 15 Wash. 148, 45 Pac. 734, and *Davis* v. *Edwards*, 41 Wash. 480, 84 Pac. 22.) We, however, prefer to adhere to the rule laid down in the prior decisions of this court, as being founded in the better reasoning.

It is suggested that because the district court heard evidence before making the appointment, therefore this court must presume that it was justified in acting. The only allegation in the application for the appointment, in addition to the averment that the defendant is insolvent, is the bald statement that "the property and funds of the defendant are in danger of being lost, removed *or* materially injured unless a receiver be appointed." This falls far short of being a statement of *facts* relied on to move the court to action. There is not any allegation that the defendant's patrons will suffer. And it may here be suggested that after seizure by the sheriff there was no longer any danger of the property being lost, removed or injured. In the brief of respondent it is said: "The application and order appointing the receiver was for the purpose only of preserving

the property and continuing its business *pendente lite.* It did not have the effect of dissolving the corporation.'' A court [5] of law has not any authority to appoint a receiver of property under attachment for the sole purpose of preserving the property and continuing the business of a defendant *pendente lite.* The function of a court of law is to subject the property attached to the payment of the plaintiff's claim as expeditiously and inexpensively as possible.

The fallacy of the notion that mere insolvency is sufficient to justify the appointment of a receiver is disclosed when we consider that an insolvent individual under the same circumstances would have no such protection as that afforded the defendant in this case, or would be subjected to no such hardship, as the case may be. The result of that line of reasoning is that a receiver may be appointed because the defendant is a corporation. Our attention is called to the fact that the defendant consented [6] to the appointment. Even so, such consent did not confer jurisdiction. If a receiver can be appointed for an insolvent corporation by consent, one may also be appointed without consent and against the best interests of a corporation, whose officers, presumably familiar with its business, might, if unmolested, succeed in making it solvent. If a receiver may be appointed in an action to recover $5,000, one may also be appointed in a case involving $25, when, perchance, garnishment of a bank account or seizure of some small article of personal property, would be amply sufficient to insure the payment of the plaintiff's claim. It would be a most dangerous doctrine to hold that a receiver can be appointed for a corporation in an action to recover a simple contract debt, merely because the defendant is insolvent.

The fact, noted in some of the cases cited by the respondent, that under our Code system of practice, law and equity are administered by the same court, is, in our judgment, entirely beside the question.

In our opinion, the order appointing a receiver was a nullity and can be attacked collaterally. (*State ex rel. Johnston* v. *District Court,* 21 Mont. 155, 69 Am. St. Rep. 645, 53 Pac. 272;

see, also, *Smith* v. *Superior Court,* 97 Cal. 348, 32 Pac. 322; *French Bank Case,* 53 Cal. 495.)

The order dissolving the attachment is reversed, and the cause remanded for further proceedings.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.